## SUPREME COURT.

DANIEL S. READ, appellant agt. WILLIAM B. JAUDON and another, respondents.

Where one joint owner of stocks brings an action against *stock brokers* for the profits arising on three specified sales of such stocks, amounting to a certain sum, and it turns out on the trial that all the dealings with the brokers in reference to such stocks were had with the *other joint owner*, and the defendants never knew the plaintiff, or that he had any interest in such stocks, and that the defendants' accounts were all kept in the name of such other joint owner:

*Held*, that the plaintiff, nevertheless, could maintain his action and recover against the defendants, where it appeared that the plaintiff had purchased the interest of his co-owner or special partner in the transactions, before suit brought, and such transfer was averred in the pleadings.

The purchases and sales of such stocks, being in fact for the joint benefit of the plaintiff and his assignor, as between themselves, were none the less on their joint account because the orders were by the assignor alone, without any disclosure of the plaintiff's interest.

If, therefore, it be conceded that there was a certain sum due from the defendants on the claim assigned by the assignor to the plaintiff, as to which there was no dispute, the mere fact that it was the assignor's individual claim, instead of a joint claim with the plaintiff, should not put the latter to a new suit; as it could make no difference to the defendants to whom they made payment, and the transfer to the plaintiff would protect them against any future claim by the assignor.

But it does not follow that the plaintiff is entitled to recover the sum thus ascertained as profits, because it turns out in point of fact that he had an interest in such profits jointly with his assignor. He cannot isolate these items of profits from the assignor's *general account*, and recover them, simply for the reason that he had *no interest in the other transactions* going to make up the whole account from which losses resulted.

The defendants having been permitted and induced to act and deal with the assignor,

in ignorance of the plaintiff's interest or rights in the transactions, may insist that the entire dealings shall be closed, as if the assignor only had been interested; that is, they may insist upon all equities existing between the defendants and the plaintiff's assignor alone, as regards the entire dealings, and the plaintiff can rocover only such sum as shall appear to be due the assignor on balancing the account.

If an objection is taken, that no such set off or equities are stated in the defendants' answer (which probably is not necessary), an *amendment* would meet the difficulty, and ought at once to be allowed, with a view to substantial justice.

*General Term, Fourth District,* 1868.

*Before* BOCKES, POTTER, JAMES and ROSEKRANS, *Justices.*

IN the month of March, 1865, the plaintiff and Geo. Caldwell, Jr., purchased together two hundred shares of Cumberland coal stock and one hundred shares of New York Central Railroad stock. Geo. Caldwell, Jr., was to have one-half the profits for doing the business. The defendants did not know of this arrangement. The stock was purchased in the name of George Caldwell, Jr., alone. There was a profit of four hundred and ninety-two dollars and seventy-four cents on these stocks.

On the 28th of March, 1865, George Caldwell, Jr., assigned all his interest in such profits to the plaintiff in this action.

On March 28th, 1865, there was to the credit of said Caldwell in the hands of the defendants:

Balance from transactions before March 22......   $38 65
Profits on sale of 200 Cumberland Coal.........   369 57
Profits on sale of 100 N. Y. Central...........   123 17
                                                  ────────
                                                  $531 39

But no notice of said assignment was given to the defendants until after April 6th, 1865, when the account had been rendered showing that the subsequent transactions of Caldwell in stocks had resulted in a loss of more than the entire profits due him at that time.

The complaint charges the purchase and sale of these three hundred shares of stock by the defendants, and that the profits were $492.74, and demands judgment therefor.

The answer is a general denial only.

The case was referred to Samuel Jackson, as referee, who found as a conclusion of law that the plaintiff was not entitled to recover, without showing that the stock was purchased by the defendants on account of the plaintiff and Geo. Caldwell, Jr., jointly.

The referee thereupon dismissed the complaint, and a judgment was entered for the defendants, from which this appeal is taken.

Ira D. Warren, *for plaintiff, appellant.*

I. The tenth finding of fact finds distinctly that the two hundred shares of Cumberland Coal stock and the one hundred shares of New York Central stock were purchased for the joint benefit of Geo. Caldwell, Jr., and Daniel S. Read, the plaintiff.

This finding is fully sustained by uncontradicted evidence.

This testimony of the plaintiff and George Caldwell, Jr., is the only evidence upon that subject.

Therefore we say that the referee has found that these stocks were purchased jointly by the plaintiff and George Caldwell, Jr., and his conclusion of law is of course erroneous.

These stocks were purchased by the plaintiff and Caldwell, under an agreement between themselves to divide the profits.

If this is not a joint purchase, it is difficult to determine what would be. The profits belonged to them jointly, and that is what the suit is brought to recover. If it was not purchased *jointly*, then Read was entitled to a judgment for his half of the profits, viz., $246.37.

II. The referee erred in holding that plaintiff is not entitled to recover without showing that it was purchased on his and Geo. Caldwell, Jr.'s, joint account.

On the 28th of March, Geo. Caldwell, Jr., assigned, by an instrument *under seal*, all his interest in these profits to the plaintiff. The assignment states that the thing assigned is "*the profits on these two hundred shares of Cumberland Coal and one hundred shares of New York Central stock.*" Whether it was a joint or several interest, the assignment conveyed it all to Read.

This gave the plaintiff the entire interest of Caldwell in the profits, whatever they were.

Therefore the referee erred in holding that plaintiff could not recover without showing that the stock was purchased on their joint account.

There is no counter-claim or other equities set up in the answer against Caldwell, and none was proved, and therefore it is of no consequence whether or not the defendants knew of the arrangement between Read and Caldwell. The assignment of all Caldwell's interest in this stock, which he supposed to be joint, is good for whatever interest he had in it. (*Hicks* agt. *Wetmore,* 12 *Wend.* 548; *Taintor* agt. *Pendergast,* 3 *Hill,* 72; *Van Lien* agt. *Byrnes,* 1 *Hilt.* 133.)

There is not a word of evidence showing that Caldwell owed them a cent. If they had any claim against Caldwell, they should have set it up in their answer and have proved the amount of it, and then the plaintiff might have been called upon to show that they had notice of his interest in this claim, and he would have done so.

III. The referee erred in finding, in the fifth finding of fact, that Caldwell was *indebted to the defendants for loss on stocks, they having advanced the purchase money on the purchase thereof.*

There is not a single word of evidence to support any such finding. There is not a word of evidence that Caldwell owes them a single penny. There is not a word of evidence that the defendants advanced one penny of the purchase money for these stocks. It is not pretended in the answer that Caldwell owed them a cent, or that they had any claim against him. The referee admitted evidence, under objection, of losses, and the purchase and sale of other stocks, *"for the purpose of showing a motive for putting these in their joint names."*

We were unable at the time, and now are, to determine what motive it tended to disclose or develop, or what bearing it could have on the issue; but it appears that the referee has *assumed* that the losses were not paid, and he has used the evidence admitted to show a motive as a foundation upon which to find a fact that the defendants in their answer don't pretend exists, viz., that Caldwell is indebted to the defendants.

The referee erred in admitting this testimony for any purpose.

IV. The sixth and seventh findings of fact are directly in conflict with the tenth, and neither of them is warranted or supported by the evidence.

Caldwell swears, and the plaintiff swears, that these three hundred shares of stock were purchased by them and for their joint benefit, and that each one was to have half of the profits, and nobody contradicts it.

The only other fact which appears, and which the referee has found, is that the defendants did not know that they purchased the stocks for the benefit of Caldwell and the plaintiff jointly.

It is difficult to see what effect that could have on this case, as long as it is not pretended that they have any claim against Caldwell, in whose name the stock was bought.

V. There are several exceptions to the admission of testimony taken by the plaintiff, which we do not propose nor think it necessary to discuss, except that we claim the referee erred in admitting every question to which we have taken an exception.

We ask, in case a new trial is granted, that the order of reference in this case be vacated. (*Murphy* agt. *Winchester*, 35 *Barb.* 616, 620; *Sharp* agt. *Mayor, &c.* 31 *Barb.* 578; 1 *How.* 193; 13 *How.* 82.)

VI. Judgment should be reversed and a new trial ordered.

SAMUEL JACKSON, *for defendants, respondents.*

I. The finding of the referee herein, that the purchases of the stocks mentioned in the complaint, and their subsequent sale, by the defendants, were made, so far as they, the said defendants, were concerned in the transaction, wholly for the benefit and on the account of the said Caldwell, was correct, and should be sustained.

II. The findings of the referee on questions of fact, where there is a conflict of testimony, must be sustained, unless such findings are clearly against the weight of testimony.

Caldwell swears he told W. B. Jaudon to purchase the two hundred shares Cumberland; that his uncle, the plaintiff, would furnish him with the money and allow him half the profits for transacting the business, and that this was the basis on which the order for the purchase of the two hundred Cumberland Coal rested. W. B. Jaudon denies this, and produces the said Caldwell's individual order in writing, which he, Caldwell, admits was given after the conversation alleged to have taken place,

and before the purchase of the stock. The order for the purchase of the one hundred shares New York Central was in writing, along with an order for a purchase which is admitted by him to have been on his own account, and he nowhere states that there was any notice to the defendant, at any time, that this was a joint transaction, and even when he requested a splitting of the account, for the purpose of settling with the plaintiff, no mention was made of the one hundred shares N. Y. Central.

The referee rightly found that defendants had no notice of any joint interest between Caldwell and Read, there being but one witness on plaintiff's side as to the verbal notice of joint account, who swears it was in the presence of three persons, two of whom, on defendants' side, swear that it never took place; and the other portion of the conversation is proved to be false by the production of the written order for the purchase of the stock.

The order for the New York Central is shown to have been only in writing, and made by Caldwell in his own name, as appears from the testimony for the plaintiff. Even if the referee believed that the conversation referred to took place, the subsequent written order without any limitation must control in the transaction.

III. A secret agreement between two or more persons will not be allowed to work an injury to third parties transacting business with one of them, which relates to the subject matter of such agreement.

IV. Good faith requires that, where a person dealing generally on his own accoun with another, undertakes to transact similar business with such person on the account of a stranger to the general business, full and due notice should be given of such special transaction; and where agency is afterwards alleged as to items where all transactions have been to all appearances on individual account fraud will be presumed, if any loss would arise therefrom to such second person.

V. That the referee held correctly in admitting testimony as to transactions between the said Caldwell and defendants, by means of which the amount due said Caldwell on March 28th, 1865, was again expended on his account and at his request, prior to the notice of the assignment.

VI. That the referee found correctly, as a conclusion of law, that, as the complaint declares, upon a transaction in which the plaintiff and Caldwell were jointly interested on the one side, and the said defendant on the other, and no proof was offered which would authorize him in holding that the defendants had notice of such joint account, therefore the plaintiff cannot recover.

(a.) As the transactions were in Caldwell's name, plaintiff must, in the absence of notice to the defendants, put himself in Caldwell's place; for this purpose the assignment is insufficient.

(b.) Were the assignment good, he can recover no more than Caldwell was entitled to when the first notice of its being made was given to defendants; and it is shown that then Caldwell was indebted to defendants.

(c.) There was sufficient evidence to throw great suspicion on the validity of the assignment for any purpose; it was made without consideration, evidently ante-dated for the purpose of working a fraud upon the defendants, and for an amount which the testimony shows was one in which plaintiff and Caldwell had no interest even under their original agreement, if any was ever made.

VII. That, if the evidence is sufficient to cast a reasonable doubt upon the good faith of the assignment, the referee was entitled to give the defendants the benefit of this doubt, in determining conflicting evidence, if all other things were equal.

VIII. That the testimony fails to show any joint interest between the said plaintiff and Caldwell, but only goes so far as to prove an agency on the part of Caldwell; but also shows that no notice that Read was principal in the two hundred

Cumberland one hundred New York Central was ever given to defendants until after this relation had ceased to exist.

IX. That whatever relations may have existed between Read and Caldwell as between themselves, as Caldwell as agent mixed his principal's business with his own so as to be undistinguishable, and as neither he nor his principal gave any notice of such agency to the defendants, with whom he was dealing, the loss of his principals' money with his own, embarked in the general business, is one for which he, Caldwell, and not the defendants, is liable.

X. That the decision of the referee should be sustained, and the judgment be affirmed.

*By the court*, BOCKES, J.    The defendants were brokers in the city of New York, and at the request and under the direction of George Caldwell, junior, they made purchases and sales of stocks, on some of which transactions profits accrued and others resulted in losses.    All orders for purchases and all directions to sell were by Caldwell, and the account was kept in defendants' books in Caldwell's name. The defendants had no notice that any other person than Caldwell had or claimed to have any interest in the transactions, until the account was closed.    How it then stood, whether the balance was in favor of Caldwell or the defendants, the referee has omitted to find.

The action is brought to recover the profits on three sales; which profits in the aggregate amounted to $492.74, ignoring all other purchases and sales by the defendants on Caldwell's account.    The right of action was made to depend on the averment, that the purchases and sale of these particular stocks, were on the joint account of Caldwell and the plaintiff.    The referee finds and certifies the fact that the evidence fails to establish or show, that the purchases and sales of these particular stocks were for the plaintiff, and the said George Caldwell, junior, jointly or on their joint account, and he adds, "I find as conclusion of law, that the plaintiff is not entitled to recover in this action without showing that the purchases of the stock in question, were made by the defendants on the account of the plaintiff and George Caldwell, junior, jointly"; and further, that "this not having

been shown, I find and adjudge, that the complaint of the plaintiff in this action, be dismissed," &c.

There is no dispute but that the profits on these three sales amounted to $492.74, as was claimed. But the defendants insisted that the purchase and sales were for Caldwell, and on his individual account, and not on joint account of Caldwell & Read. The referee so found. But was that a defense of itself? Suppose it was so, it would present no insuperable difficulty to a recovery, all other difficulties being out of the way, inasmuch as Caldwell had assigned the claim to Read, the plaintiff; and such transfer was averred in the pleading. The objection then to a recovery would have been simply and only that the claim assigned to the plaintiff, was a claim of Caldwell alone, instead of a joint claim of Caldwell and the plaintiff. This would not afford a defense. At most it could be deemed a mere variance between the pleading and proof in no way affecting the merits, and which variance should be disregarded in every state of the case. If, therefore, it be conceded that there was in fact $492.74 due from the defendants on the claim assigned by Caldwell to the plaintiff, as to which there was no dispute, *the mere fact*, that it was Caldwell's individual claim, instead of a joint claim belonging to himself and the plaintiff, should not put the latter to a new suit. It could make no difference to the defendants in case the demand was a valid and just one, to whom they made payment, and the transfer to the plaintiff would protect them against any future claim by Caldwell. It was therefore erroneous in this case to hold, as did the referee, that the plaintiff could not recover, simply because the demand assigned to him was originally the demand of assignor alone instead of one belonging to his assignor and himself jointly. If necessary an amendment of the complaint should have been made to meet the objection, which on the supposition that there was no other defense, was purely technical and without merit. There was not,

however, any objection raised to a recovery on the ground of variance.

But the referee clearly erred in finding that the evidence failed to establish the fact that the purchases and sales, as regards the three transactions mentioned in the complaint, were made on the joint account of the plaintiff and Caldwell.

I think it clearly and indisputably appears that Caldwell and Read were jointly interested in the profits on the sales, to recover which profits this action is brought. · I understand both of them to so testify, and their testimony stands uncontradicted, except by the fact that all orders and directions in regard to these transactions, were made by Caldwell alone, without disclosing Read's connection with them. But his silence in regard to Read, and the fact that all orders and directions came from Caldwell alone, are not in conflict with the undisputed evidence that Read was actually interested in the transactions. As to them he occupied the position of a silent partner, having in point of fact an interest of which, however, the defendants were ignorant. Indeed the referee so finds in substance, if not in direct terms. In his *tenth* finding he says: "I find that Daniel S. Read and George Caldwell, Jr., agreed between themselves to purchase and sell together, said two hundred shares of Cumberland Coal stock and said one hundred shares of New York Central Railroad stock, and that George Caldwell, Jr. was to have half of the profits on such purchase and sale for transacting the business, and Daniel S. Read the other half; but that defendants had no knowledge of such agreement" (*fol.* 100). This finding of the referee is abundantly sustained by the evidence, and the case therefore shows that Caldwell & Read were jointly interested in the profits resulting from the sales of the stocks alluded to, the same having been purchased and sold in fact, for their joint benefit, the purchases and sales were none the less on their joint account, because the orders

were by Caldwell alone, without any disclosure of Read's interest.

My conclusion then is, that the tenth finding of fact by the referee is correct, and that the seventh and ninth, wherein he finds that Caldwell & Read were not jointly interested in the profits resulting from the purchase and sale of these stocks are erroneous.   But it does not follow that the plaintiff is entitled to recover the $492.74 profits, because it turns out in point of fact, that he had an interest in such profits jointly with Caldwell.   He cannot isolate these items of profits from Caldwell's general account and recover them, simply for the reason that he had no interest in the other transactions going to make up the whole account from which losses resulted.,  The defendants, having been permitted and induced to act and deal with Caldwell in ignorance of Read's interest or rights in the transactions, may insist that the entire dealings shall be closed as if Caldwell only had been interested.   They may insist upon all equities existing between them and Caldwell alone, as regards the entire dealings, and the plaintiff can recover only such sum as shall appear to be due Caldwell on balancing the account.   Read put Caldwell forward to act, or had permitted him to act for and in behalf of both, but in his individual name, without disclosing his true position.   Those with whom he thus dealt had, and still have the right to hold him to the position he was permitted to assume, as regards any claim made by Read having its origin in these transactions.   The case in this regard is like that of principal and agent where the agent is permitted to act and does act in his own name without disclosing his agency.   In such case he may be treated as principal and the right of set-off and all other equities attach as if he were in fact the principal and alone interested in the transactions, and although the principal may step in and assert his rights he will be held to take the place of his agent, and to have no other rights than those which his agent could have enforced had he been principal instead of agent.   (24

*Wend.* 458; 2 *Kent*, 632; 26 *How.* 522–3.)   In this case, therefore, the plaintiff should have been regarded as occupying Caldwell's place, and the examination of the dealings between him and the defendants should have been pursued further than seems to have been done on the trial, for the purpose of determining what sum, if any, remained due him on his account with the defendants.   If the balance was against Caldwell on the entire account, the plaintiff could not recover.   If in his favor a recovery could be had for such balance, not exceeding in any event, the profits on the three sales specified in the complaint.   It seems that evidence was offered showing how the account stood, which was excluded on plaintiff's objection.   In the view I take of this case, this evidence should have been admitted.   But without it the plaintiff was clearly entitled to recover.   So the plaintiff objected to its admission, and it was not considered in deciding the case, yet, notwithstanding it was ignored, the plaintiff was defeated whereas, such evidence being excluded or ignored, he should have recovered.

Perhaps it may be said that no set-off or equities in defendants' favor were set up in the answer.   I am not prepared to hold that it was necessary to state in the answer in this case, that the claim in suit was part of a running account between the defendants and the plaintiff's assignor.   If the evidence showed such fact, the plaintiff could not recover without showing a balance on the whole account, as I think. But however this might be, if objection should be made on that ground, an amendment would meet the difficulty, and it would be at once allowed with a view to the attainment of substantial justice between the parties.   It is plain, I think, that the case was disposed of on a wrong theory.

The findings of fact so far as the referee has gone, seems well supported by the evidence, except the seventh and ninth, which, however, are corrected by the tenth.   But the referee should have gone one step further and stated how the whole account stood between Caldwell and the defend-

ants.  This was necessary to the proper disposition of the case, and when seen what the judgment should be, would be very plain.

Judgment reversed; new trial ordered; costs to abide the event; reference discharged.